# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **DANIEL N. HALTER,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20cv00219 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **BRYAN F. HUTCHESON, *et al.*,** | ) | By:   **Hon. Thomas T. Cullen** |
| | ) |         **United States District Judge** |
| Defendants. | ) | |

Plaintiff Daniel N. Halter, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, against two administrators at the Rockingham-Harrisonburg Regional Jail ("Rockingham Jail") alleging violations of his First and Fourteenth Amendment rights under the U.S. Constitution. This matter is before the court on Defendants' Bryan F. Hutcheson and Captain Jimmy Wilmer's motion for summary judgment and Halter's motion to amend. After reviewing the record, the court concludes both of Halter's claims fail as a matter of law. Accordingly, the court will grant Defendants' motion for summary judgment and deny Halter's motion to amend.[1]

---

[1] Halter's second motion to amend was filed on June 17, 2020. (ECF No. 15). Federal Rule of Civil Procedure allows plaintiffs to file an amended complaint in two circumstances. *See* Fed. R. Civ. P. 15(a). Because the time in which to file an amended pleading as a matter of right has passed, Halter may only amend his complaint "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). The motion to amend names two new defendants but does not add allegations about actions the defendants allegedly took that violated Halter's rights. As a general rule, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis and citation omitted). An amended complaint must state facts in addition to legal conclusions; defendants "cannot be expected to defend against a claim built on legal conclusions, but no chronology of facts." *Bentley v. Johnson*, No. 7:09CV00253, 2009 WL 2370618, at *2 (W.D. Va. July 31, 2009), *aff'd*, 358 F. App'x 418 (4th Cir. 2009). An amendment is futile when there is a fundamental defect in the complaint and "[a] court may refuse to allow leave to amend when the proposed changes would be futile." *New Beckley Mining Corp. v.*

## I.

During the relevant time period, Halter was an inmate at the Rockingham Jail. He asserts that on March 13, 2020, between approximately 4 p.m. and 4:37 p.m., he was "stop[ped] from praying, and told to remove [his] head covering[.]" Halter does not specify which officer(s) allegedly instructed him to do so. He alleges this was a deprivation of his First Amendment rights under both the Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*.[2] Halter alleges Defendants are "responsible for implementing, regulating, and [enforcing], creating, policies and operational procedures." Halter also alleges that he was punished "without due process" in violation of his Fourteenth Amendment rights. He claims he was "placed in segregation for 10 days" without a hearing to "defend the allegations against him."

In support of Defendants' motion for summary judgment, Captain Jimmy Wilmer provided an affidavit; the policy regarding participation in religious services that was in effect on March 13, 2020; the incident report from March 13, 2020; copies of the sections of the inmate handbook governing segregation, inmate conduct, discipline, and sanctions at Rockingham Jail; and the portion of the inmate handbook regarding religious materials, items, or clothing.

---

*Int'l Union, United Mine Workers*, 18 F.3d 1161, 1164 (4th Cir.1994). As Halter's second amended complaint fails to allege facts against the newly named defendants, it is futile and the motion to amend will be denied.

[2] The RLUIPA does not authorize a private cause of action for monetary damages against state officials in either their official or personal capacities. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011).

Defendants assert that on March 13, 2020, Halter was sitting with a towel over his head in the "day room," in violation of the jail's rules.[3] Halter was ordered to remove the towel several times, which Halter allegedly refused to do. Defendants deny Halter's allegation that he was told he could not pray. Because he refused to comply with the officers' orders, Officer Sigala[4] ordered Halter to "lock down," or return to his cell.

Captain Wilmer asserts that prior to March 13, 2020, he was unaware of any requests from Halter to wear a head covering for religious reasons. Captain Wilmer claims that after the March 13, 2020 incident, he "weigh[ed] the information" from Halter against the safety and security concerns and decided to allow Halter to wear a "skull cap" or yarmulke in areas other than his cell. Defendants assert that Halter was given such a head covering on June 4, 2020. Defendants assert that Sheriff Hutcheson subsequently instituted specific procedures in the Rockingham Jail inmate handbook to establish more uniform procedures for variance from jail policy for religious reasons. Defendants assert this is the sole involvement that Sheriff Hutcheson had with Halter's claim.

Regarding Halter's claim that he was transferred to administrative segregation without due process, Defendants proffer that there are two forms of segregated housing at Rockingham Jail: administrative segregation and disciplinary segregation. Defendants assert

---

[3] Rockingham Jail has a general policy prohibiting inmates from wearing head coverings in areas of the jail other than their cell. Defendants assert the purpose of this policy is to promote jail security because weapons, notes, and other contraband can be concealed under such head coverings. Defendants assert that head coverings are also a concern because they have the capability of concealing the identity of the inmate, which presents an added security concern. The Rockingham Jail policy that was in effect on March 13, 2020, stated that, if an inmate's faith stipulates requirements that are different than standard practices, the inmate's beliefs would be accommodated if the requirements are consistent with health and safety considerations. The inmate must submit a request which clearly states what variance is sought and the reasons for it so that jail staff may evaluate their request.

[4] Officer Sigala is not a party to this lawsuit.

that administrative segregation is not a "punishment," but rather a discretionary tool to allow for short-term isolation of an inmate to ensure orderly operation of the jail and the safety of jail staff and other inmates. Administrative segregation does not result in loss of "good-time" credit, which *can* occur with a disciplinary segregation. Because administrative segregation is short term and is not used for disciplinary reasons, Defendants assert that a hearing is not required before placing an inmate in administrative segregation.

Halter was placed in administrative segregation following his failure to lock down on March 13, 2020. According to Defendants, Halter was ordered to lockdown by non-defendant Officer Sigala after the disagreement related to Halter's head covering. A lockdown requires the inmate to return to his cell and stay there until released, but the door to the cell is not locked. Defendants assert the purpose of this type of lockdown is to deescalate tense situations and give inmates an opportunity to 'cool off' while also allowing officers to maintain jail security without having to resort to harsher discipline. Forty minutes into the lockdown, defendants assert Halter was seen out of his cell. Officer Sigala again ordered Halter to return to his cell and remain in lockdown. Defendants claim that Halter refused to comply and argued with Officer Sigala. Halter was allegedly placed into administrative segregation because of his failure to lockdown when ordered to do so. Defendants proffer that an institutional charge of failure to lockdown—which Halter was not given—is a Major Charge 100 series offense which can result in loss of good-time credit of up to 90 days, minimum disciplinary segregation, and

loss of commissary, recreation, family visits, and program participation for 30 days. Halter claims he was placed in administrative segregation for 10 days.[5]

Halter filed a complaint in this court on April 17, 2020, alleging violations of the First and Fourteenth Amendments and requesting injunctive relief in the form of "new policies and to stop discriminating against inmates who practice religion by covering their head," as well as $25,000,000 in punitive damages. Halter filed a motion to amend his complaint on June 17 (ECF No. 15), and Defendants filed a motion for summary judgment on July 13. (ECF No. 17). After review of the briefs, available evidence, and applicable law, this matter is ripe for decision.

## II.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion

---

[5] Defendants assert that Halter was in administrative segregation for seven days, but Halter asserts he was there for 10.

for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Defendants assert they are entitled to summary judgment in regard to Halter's First Amendment and RLUIPA claims because (1) Halter's free exercise of religion was not substantially burdened; and (2) he has failed to establish deliberate or intentional conduct by Defendants.

To state a claim under the First Amendment or the RLUIPA, a plaintiff must first demonstrate, as a threshold matter, that he has a sincerely held religious belief. *U.S. v. Seeger*, 380 U.S.163, 185 (1965). A plaintiff must next demonstrate both that there was a "substantial burden on a [his] right to practice his religion," and that the correctional officer's actions were a "conscious or intentional interference with the plaintiff's rights." *Wall v. Wade*, 741 F.3d 492,

498, 503 n.11 (4th Cir. 2014) (internal quotations omitted) (quoting *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006)). A substantial burden is one which "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981). A correctional policy or practice that substantially burdens an inmate's First Amendment rights is still permissible if it is reasonably related to legitimate penological interests. *Lovelace*, 472 F.3d at 199. Whether a regulation is reasonably related to a legitimate penological interest depends a four-factor analysis: (1) Whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether the asserted interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates," which asks whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on the security of staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." *Id.* at 200 (citing *Turner v. Safley*, 482 U.S. 78, 89–92 (1987)); *see Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the *Turner* analysis). For a claim to be successful, a plaintiff must establish more than mere negligence by the defendants, as "[a]llowing negligence suits to proceed under RLUIPA [or the First Amendment] would undermine . . . deference [to the experience and expertise of prison and jail administrators] by

exposing prison officials to an unduly high level of judicial scrutiny." *Jones v. Bailey*, No. 7:16-CV-00469, 2018 WL 1513297, at *6 (W.D. Va. Mar. 27, 2018) (cleaned up).

Because the parties do not dispute that Halter's religious beliefs are sincere, the question before the court is whether the correctional officers' actions imposed a substantial burden on Halter's religious freedom. Short delays in providing religious accommodation are not substantial burdens on a prisoner's right to practice his religion. *See, e.g., Moore v. Baker*, No. 7:16-CV-00555, 2017 U.S. Dist. LEXIS 214800, at *11 (W.D. Va. Dec. 15, 2017) (finding a short delay in religious accommodation was not a substantial burden); *Hove v. Clarke*, No. 7:14CV00124, 2015 U.S. Dist. LEXIS 68237, at *10–15 (W.D. Va. May 27, 2015) (concluding a six-month suspension from Common Fare did not pose an atypical and significant hardship in relation to the incidents of ordinary prison life), *aff'd*, 628 F. App'x 199 (4th Cir. 2016); *Awe v. Va. Dep't of Corr.*, No. 7:12-CV-000546, 2013 U.S. Dist. LEXIS 161227 at *4–10 (W.D. Va. Nov. 12, 2013) (finding a six-month suspension from Common Fare diet was not a substantial burden on free exercise of religion), *aff'd*, 564 F. App'x. 54 (4th Cir. 2014); *Muhammad v. Mathena*, No. 7:14-cv-00142, 2015 U.S. Dist. LEXIS 91081, at *8 (W.D. Va. July 14, 2015) (finding a six-month delay in receiving religious periodicals did not constitute a substantial burden); *Williams v. Mathena*, No. 7:10-CV-00404, 2010 U.S. Dist. LEXIS 113273, at *9 (W.D. Va. Oct. 25, 2010) (finding that the inmate failed to establish that officials knowingly placed a substantial burden on his ability to practice his religious beliefs where there was a several week delay in adjudicating a religious food request). Based on this precedent, the court concludes that the less-than-three-month delay in accommodating Halter's religious head covering was not a substantial burden on his religious beliefs.

Insofar as there is a dispute over whether Halter was told he could not pray, Halter has not alleged facts against either of the defendants that indicate they acted consciously or intentionally to interfere with his rights. *Wall v. Wade*, 741 F.3d 492, 503 n.11 (4th Cir. 2014) (internal quotations omitted) (quoting *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006)). This factual dispute—viewed in the light most favorable to Halter—does not affect the disposition of this claim as he does not allege facts of conscious or intentional interference by either defendant.[6] Accordingly, the court will grant the defendants' motion for summary judgment on Halter's First Amendment and RLUIPA claims.

## IV.

Defendants assert they are entitled to summary judgment on Halter's claims that they violated his Fourteenth Amendment due process rights. The court agrees and will grant the defendants' motion for summary judgment on this claim as well.

The initial inquiry for a prisoner's due process claim is whether the plaintiff has demonstrated that he has been deprived of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 477–78 (1995). Liberty interests which are protected by the Fourteenth Amendment arise from two sources—the Due Process Clause and the laws of the states. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (citing *Meachum v. Fano*, 427 U.S. 215, 223–27 (1976)). Prison officials

---

[6] In his supplemental amended complaint, Halter includes a copy of his grievance form. (*See* ECF No. 13). This grievance form alleges that Halter "sent several requests" related to his desire to cover his head. Insofar as Halter alleges he made "several requests," Halter does not allege any facts of intentionality or conscious act against the defendants in this suit. "[C]onscious or intentional interference with the plaintiff's rights" is required to give rise to a substantial burden of the plaintiff's rights. *Wall v. Wade*, 741 F.3d 492, 498, 503 n.11 (4th Cir. 2014) (internal quotations omitted) (quoting *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006)); *Jones v. Bailey*, 2018 U.S. Dist. LEXIS 50065, *15, 2018 WL 1513297 (W.D. Va. March 27, 2018) ("[L]ess than intentional conduct is not sufficient to meet the fault requirements under the RLUIPA or the First Amendment."). As Halter fails to allege conscious or intentional action against Defendants here, his claim would fail even if his allegations in his grievance of making "several requests" were incorporated into his complaint.

have "broad administrative and discretionary authority over the institutions they manage," and "lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Id.* at 467 (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). So long as the degree of confinement a prisoner is subjected to is "within the sentence imposed upon him" and does not otherwise violate the Constitution, the Due Process Clause "does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). Under certain circumstances, states—through their correctional policies—may create liberty interests for prisoners which are protected by the Due Process Clause, but these interests are generally limited "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84; *see also Garrett v. Angelone*, 940 F. Supp. 933, 943 (W.D. Va. 1996) (finding that a prison regulation creates a liberty interest and implicates due process protections only where the regulation imposes upon the inmate conditions that dramatically depart from the expected conditions of his sentence). A liberty interest under the Due Process Clause arises only when, independent of state law, a deprivation exceeds the prisoner's sentence in an unexpected manner or when state law of a mandatory character imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 486–87. The court must therefore determine whether the conditions suffered were expected within the contours of the actual sentence imposed. *Id.* at 485.

In regard to placing an inmate in administrative segregation, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms

of confinement ordinarily contemplated by a prison sentence." *Hewitt,* 459 U.S. at 468. Administrative segregation is "the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," and there is not a liberty interest associated with administrative segregation which is "independently protected by the Due Process Clause." *Id.* Inmates do not have a liberty interest in a particular security classification or in freedom from segregation; "reclassification into a different security level is simply an incident of prison life." *Shelton v. Angelone*, 183 F. Supp. 2d 830, 838–39 (W.D. Va. 2002).

Halter's placement in administrative segregation is "the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt,* 459 U.S. at 468. Because Halter has not shown that his placement in administrative segregation resulted in the loss of "good-time" credit, he does not have a liberty interest related to his particular security classification or housing assignment, and his claim fails as a matter of law. Additionally, Halter has failed allege any conditions which could support a finding of atypical and significant hardship. Accordingly, the court will grant the defendants' motion for summary judgment on Halter's due process claims.

## V.

For the reasons discussed, the court will grant the defendants' motion for summary judgment and will deny Halter's second motion to amend as futile.

The clerk shall send a copy of this memorandum opinion and the accompanying order to the parties.

**ENTERED** this 30th day of March, 2021.

>  */s/ Thomas T. Cullen*
>  HON. THOMAS T. CULLEN
>  UNITED STATES DISTRICT JUDGE